Mr. Messer, is it Mote or Mote or some other pronunciation? Mote. Mote. All right. We're in New Orleans, so you think French, but in Texas we would say Mote. Go ahead. Good morning. May it please the Court. The issues of this First Amendment case involve matters of law for the Court to decide. They do not involve the underlying factual issues. The issues in this appeal today involve the clearly established law prong of qualified immunity, which is an issue of law. Qualified immunity protects government officials from civil liability when their conduct does not violate clearly established constitutional rights. As this Court held in Romero v. Grapevine in April of this year, qualified immunity represents the norm, and courts should deny qualified immunity only in rare circumstances. That is not what the District Court below did. To overcome qualified immunity, the appellee, Mr. Mote, must allege a violation of a clearly established constitutional right. It is the plaintiffs that bear the burden of proof to demonstrate that a defendant government official is not entitled to qualified immunity. The appellee, Mr. Mote, did not meet that burden of proof here, and the District Court erred in denying Chief Walthall qualified immunity because there is no clearly established constitutional right based on clearly established law in the context of this case. In fact, if you look at the underlying summary judgment proceeding, Mr. Mote did not cite one single case in the District Court to demonstrate clearly established law for his purported First Amendment rights. So this is either a really good question or a really stupid question, but I'm going to ask it because it's been bugging me. Why are we not talking about Garcetti, Lane v. Franks, Anderson v. Valdez? Even Janus that came out a few weeks ago speaks to some of this, and we're not talking about any of those cases. Why not? Well, what I'm focusing on is the clearly established law in the context of this. Right, but aren't — isn't Lane v. Franks exactly about that? It's a Supreme Court case that talks about whether the person was on notice of this particular constitutional violation in the First Amendment context. So why — I just — I'm just — we seem to be missing so many cases I'm used to in this context that it makes me think perhaps I'm completely missing the issue. So I just want to be sure I'm — I'm not missing something. Right. What I'm — what I'm focusing on is the clearly established law and whether the rights were with a bright line established in the context of a local association. We're focusing on a local organization here, not something that — I'm talking about the freedom of speech. I understand. Okay. And that's — and that — and those are issues of law. And there are cases that say that because of the public and private concern involving First Amendment speech, that that's an aggrayer. As a matter of fact, we cited the court to Campbell v. Galloway out of the Fourth Circuit that said this mixture of public-private concerns and talking about a speech, and in that instance, a police chief that fired an officer asserting that mixed type of speech. And the gray area of what that is, and on a case-by-case analysis, having to guess on what the outcome's going to be, is a gray area of the law. It's not a bright line. But under that theory, you never would have liability for repressing speech unless there's exact same facts down to the T, which this whole area of whether you need a case on point is complex in the qualified immunity. But it seems like you're basically saying you have no First Amendment rights as a government employee unless you just — the boss absolutely just takes the case and says, I'm going to do it exactly like this guy did, and then I'll get pounded. Well, I think this clearly established law precedent is in play, for sure. I mean, if you look at the case from last year of White v. Pauley, the Supreme Court said, quote, in the last five years, this court has issued a number of opinions reversing federal courts in qualified immunity cases. The court has found it necessary both because qualified immunity is important to society as a whole and because an immunity from suit, qualified immunity is effectively lost if the case is erroneously permitted to go to trial. They go on to say, and this was last year, today it is again necessary to reiterate the longstanding principle that clearly established law should not be defined at a high level of generality. Let me talk to you a little bit about the Pace case. Yes, sir. In that case, we had two associations, one of college professors and another of college administrators. Right. And we affirmed a damage award for both of those members in that association because of violation of the members' free speech and association rights. Right. And the court said the First Amendment protects the right of all persons to associate together in groups to further their lawful interest. Right. And so how do you, I mean, why doesn't that establish, clearly establish law? Well, I think that case along with some of the other cases that the appellee relies upon are distinguishable because in that case, well, first of all, those entities are not parties in this case. The state, national, and local associations are not parties here. All we have is a police officer that's a party here. And in that case, that case basically said these entities are a union. And so it analogizes the law under a union. We do not agree that this local organization is a union in this case. It cannot function as a union under Texas law. That Pace case did not analyze the functioning of this organization, a local association, under the Texas Government Code, Section 617.002. I don't gather that the associations in Pace were unions. They were just associations of college professors and college administrators. I understand, but the case analyzed those rights that are provided by the union. The union is the one that was providing these First Amendment rights to the professors. And here we're saying this local association is not a union and it cannot function as a union in Texas. It's prohibited under Texas law from functioning in any way as a bargaining agent for any police officer. So a union can only act through its representatives, can it? Sure. So, I mean, here there was a judgment against, in Pace, the president, the college administrator who sued, got a judgment against the representative. Yes. What's the difference? In my view, again, the court said these are unions that provide First Amendment rights to its members. Here, if you look at the goals of this local association, there's nine of them that are written out. Those nine goals all deal, or eight out of the nine, deal with bargaining with the city to improve wages and benefits for the police officers, and by law, under 617.002 of the Government Code, they cannot do that. They have no right. Let me give you an example. This organization and its members, the members, would have no right to come to the city council and have an agenda item placed on there to talk about terms and conditions and benefits of the police officers for the city. They have no right. They would only have a right. I'm sorry to interrupt, but you've put your finger on the question I wanted to ask, and it's a follow-up to Judge Davis's question. As I understand your argument, there is no clearly established right violated here because this organization, whatever we want to call it, did not have the right to engage in collective bargaining. That's your argument, right, that there's no case on point that says you have an organization here. The law of Texas doesn't require the employer to engage with this organization. Therefore, when the chief retaliated, allegedly retaliated against the person, there's no violation clearly established, right? So just to follow, Judge Davis pointed us to the Pace case. Here's a quote from the Pace case, and I want to hear your response to this quote. The issue is not whether a public employer is required to deal with a union or other employee association, but whether the state may set out to injure or destroy an association of public employees for the purpose of preventing the exercise of their First Amendment rights. Now, I understand your position is that your client didn't factually do that, but we can't review that, right? We don't have jurisdiction to review the facts of that. So we're here on a pure question of law. As I understand it, it's, is this organization not covered by the First Amendment because the employer doesn't have to collectively bargain with them or engage with them under Texas law? And if that's your argument, why doesn't the Pace case sort of say, well, it doesn't really matter whether the employer has to engage with them. We're looking at something different. I think we now understand that to have clearly established law, there has to be cases that are particularized in the sense and the setting of which you come to and which the government official is making a decision. It cannot be a gray area. It has to be bright lines, and the official has to contravene those bright lines. Doesn't this case set out a bright line? Not in my view. It doesn't matter whether you have to engage with the organization under the relevant labor laws. That case doesn't sort of, doesn't say that in your view? In my view, that case doesn't deal with the prohibitions of what a local association can do in Texas law under Chapter 617.002. That is the specific context of where we are. So your rule is that there has to be a case about that exact association. Something very, very similar, not good enough, has to be that exact association. That sounds like a case exactly on point as opposed to not a high level of generality. I don't, that's not my position. My position is there has to be, there should be a case that clearly talks about a local association and what it is. In our view, this local association is nothing more than a 501c3 organization that is for socialization and benevolence, like the PTA, something like that, that gives no First Amendment protection to its members. And you have to analyze the prohibitions of 617.002. That's very fact bound because what was presented to the chief was essentially a union with no collective bargaining. So we are going to be dealing with, I mean, she wasn't mad that they're all going to get together and drink beer. She's mad that they're getting, according to them, that they're getting together and going to talk about issues pertaining to work, work environment, work issues, complaints about bosses and so on, hours, pay, all of that. That's the problem. So it's not the same thing as the Friday night beer blast group because, frankly, I don't think she would have cared about that as long as they weren't in uniform. I think you have to look at the circumstances that were presented to her. She had two conversations with Mr. Moat. That's it. And those conversations were, hey, I'm thinking about starting an association that dealt with a multiple variety of things, socialization, doing good for the community, and coming to the city council to talk about our pay, et cetera. And by law, they are prohibited from doing that. That sure sounds like something other than the beer bunch. Sure. Right. But that is my point is that there is not a case that I know of that deals with these specific rights in a mixed union association context. And I guess I would cite you to a case that just came out on June 15th of this year out of the Western District of Texas, Judge Rodriguez, United Steel v. Anderson, 2018, West Law, 301-7366. And in that case, he dealt with, recently, a couple of weeks ago, he dealt with analyzing a First Amendment case, just like this case, that dealed with claim retaliation by what he calls a union. We don't agree there's a union in this case involving speech and association, a mixed claim speech like this. And if you look at how Moat pled this. Give me the name of the case again. I'm sorry. I'm sorry. It is United Steel v. Anderson, 2018, West Law, 301-7366. And just so you know, did you send a 28-J? Because I didn't see. 28-J letter, did you send one on that? I did not. Okay. That's what you're supposed to do and not just show up and surprise the other side of the case. I'm sorry. I just found this case. And so in that case, the federal judge said the standard to be applied in cases involving mixed speech and association is unclear. He uses the word unclear, and then he goes on to say, and there's a lot of other issues in that case, but he goes on to say, quote, the court has not located any Fifth Circuit cases with mixed union and speech association claims to provide guidance on the proper analysis, end quote. And so if this federal judge says this is a gray area, I have no idea what the law involving this mixed speech and association is. How can we expect the police chief to do the same? I don't think it's fair. I think it's a gray area of the law, especially, again, with the statute that prohibits all of the action by this local organization. And we think that's exactly. You'll have to analyze this as one blob, speech and association, and get confused by that. Rather than looking at association and whether there's guidance on that, and then looking at speech and whether there's guidance on that. That's what the underlying district court did. He looked at them separately, and this federal judge says. . . I have great respect for the underlying district court, but that doesn't help me. I still have to follow precedent like U.S. Supreme Court precedent. Sure, and to me. . . And to me, those are separate claims, association, speech. You're saying when you combine the two, it becomes so confusing that we get qualified immunity. You're saying if you plead them together, and if you look how he pled them, he pled them together in one sentence. Then what's a police chief supposed to do when there's a mixture like that? There's not clear, bright-line standards here. That doesn't meet the demanding standards of qualified immunity. So we believe the district court analyzed this as too high of a level, looked at only the speech of the organization and not Mr. Mote, and that qualified immunity should protect the police chief and the district court. Would the same rule apply to a union? If the union, there's evidence that you have a similar case, and it's a union. No. I mean, my experience is all those guys have some fun together, too. That makes it a different case? No. If this was a union and could function as a union, my position would be different. I'm saying this is a local association that gives no first amendment. You mean a union as defined by the relevant labor laws of the state. So if it doesn't qualify as a union under those labor laws, no express association rights under the first amendment. And it cannot function as a union here. This organization clearly cannot function. That's part and parcel of whether it qualifies. Right, exactly. And there's not a clearly established case on that. You reserve time for rebuttal. Thank you. Mr. Watzke. May it please the Court, and Mr. Messer, my name is David Watzke, and I represent Marcus Mote in this case. There is specific law on this issue. Tell us your best case on association. It started in 1984. Judge Davis mentioned it with respect to PACE. PACE was in Texas. Texas does not allow collective bargaining, and yet the Court, as it should have, specifically stated that there is a protected right of association for persons to join together and petition the government. Now, whether the government has to listen or not, which I think is Mr. Messer's argument, is irrelevant to the first amendment issue. You are associating together. The first amendment doesn't care about whether the government has to listen to you. Okay, while we're talking about listening, let me ask you about the speech. I'm a little bit confused. Usually in these cases the person said something. They went out and campaigned for a political, you know, the opponent to the sheriff, or they went out and said the chief is an idiot and doesn't know what they're doing or something like that. So they've said something that they then supposedly got fired for. What is that something? Is it just we are going to form this entity, whatever it may be, or was there anything else that was said that is the reason that Mr. Mote was fired? Okay, so now I think we're going on to the speech issue. Yes, we are. So we were talking about association. Because you're talking about hearing. I really can't hear an association. Okay. I can see one, but I can hear speech. So I'm just trying to understand what the speech is that the chief heard that caused her to fire Mr. Mote. The speech was both verbal and in writing. It was in meetings that Mr. Mote, Officer Mote, had with the chief in which he expressed the goals and mission of the association. And what was that? I mean, just give me the core, bottom line summary of what he said. Basically that he wanted to have camaraderie among the officers to engage the community, to reach out to the community. There were written statements made prepared by him in connection with the association where he wanted to have community activities where the community would play games with police officers and have charitable donations organized by police officers, anything that he and the association wanted to do. And was this to further the cause of people trusting police officers and working more with police officers so that police officers could better do their job? That was one of the reasons. So then why does that not fill in with Garcetti that it's not a matter of private concern but rather a matter of him as an employee wanting to just be a better employee? Because the way he did it was to— I don't mean public concern. Him as a private citizen, that's the word I meant. This is a public concern. It is a public concern, but what I'm saying is why was his speech then one of a private citizen rather than as an employee wanting to do a better job by, like in my neighborhood, sometimes the police show up and just have visits with the community so you know your officer and theoretically I guess it would make you more trusting of the officer, tell them things, feel more comfortable calling them, so on and so forth. Why isn't that what he's doing, which would be a matter not as a private citizen but as an employee? Well, it's a mixture. It's both, and there are cases that specifically say that in the speech context, in the context of speech like Thompson v. City of Starkville, 1990, in that case the person complained about some personal concerns, but he also broadened it to concerns overall, and that was protected. And what we have here is not just those types of comments that I described. It also reached further in terms of the goals and mission of the association to get better benefits, get better a chaplain. But those aren't really matters of public concern. Well, they are to the extent that it's not just about him. The cases that have been cited both by Chief Walthall as well as in our brief distinguish between a person that just complained. If you're an officer and you have a grievance and it's about how you were treated specifically in connection with some kind of discipline and it doesn't allege any kind of broader thing, then that is clearly not protected. That's an internal matter. Now, what we have here is an association, and Moe is the organizer of the association, and he is talking about very broad issues of pay, of benefits, and all types of things that relate to the department as a whole. And those are things that are protected by First Amendment. What is your response to it seems like your opponent is arguing that we have to construe this as kind of one big messy blob and it's very confusing how the association and the speech intersect and so we just have to throw up our hands. What is your response to that? Do we decide it as a blob or do we separate association and speech and analyze them separately? Totally separately. Now, they may overlap, but we have a cause of action of First Amendment freedom of association. We also have a cause of action for First Amendment freedom of speech. Okay. Let me ask you, focusing in on that, about Lane v. Franks, 134 S. Court 2369. So that was the case about the guy that testified at the corruption trial and then was fired. And the Supreme Court found that you have a First Amendment right to testify truthfully at a corruption trial. You can't be fired for that. However, after going through a long list of 11th Circuit cases, because this came out of the 11th Circuit, they said the president of the community college in question would not have been on notice of that and gave qualified immunity to that president. Why doesn't that cover this, that maybe you're right on the first prong, maybe this really is a violation of the Constitution on the speech? I'm just talking about the speech. But given the lack of case law on that, why isn't this a qualified immunity under Lane v. Franks? Well, I think that's delving into certain factual matters as to whether Chief Walthall knew about certain aspects of the speech, which this was a summary judgment motion, and I know the court is limited on that, but basically there was much evidence that she was fully aware of everything that was going on. In other words, here the president of the community college was aware that this guy or gal, I don't remember the gender, had testified at the corruption trial against the official being charged with the corruption. And the assumption by the Supreme Court is this person was fired for so testifying. So no fact dispute. And they said that is wrong, very, very wrong. However, the president of the community college was not on notice of that in advance, so we find qualified immunity. I don't know why that doesn't, even if we find all of this speech in your favor, why that doesn't mean the qualified immunity for the chief, at least on the speech prong, putting aside the association issue, which I have a little different analysis of. Well, in that case, the notice part, there's tons of summary judgment evidence concerning the notice of all the things that were happening in terms of what the, what Moat wanted to accomplish. It's not a notice of what Moat is doing. It's notice of I'm aware that this guy is out there saying things I don't like, and I want to fire him for that. Now, is there a case that tells me that that's wrong? That's really what Lane v. Franks is about and what this whole qualified immunity in general, at a high level of generality, is about. Again, I would go back to Thompson v. City of Starkville, 5th Circuit, 1990. Also, Davis v. McKinney, 2008. That's also 5th Circuit. And in those cases, basically, the impacted workers were complaining about certain things, and in those cases, since they went beyond the chain of command, which here is this is clearly going beyond the chain of command, the courts ruled that qualified immunity was not applicable and that there was a First Amendment freedom of speech claim in both of those cases. In terms of the issue of Was Moat actually complaining, or was he saying he wanted to have an organization of officers who would be in a position to complain should they have a complaint, or in a position to do something positive like interact with the community? Was there any indication that he actually complained? Okay, the simple answer to that is no. However, the First Amendment doesn't contemplate it has to be a complaint. It has to be speech. It can be about anything as long as it's protected, and we are arguing that it is protected. And so when you go in and you say something like, we want to have a survey of salaries to see if Corinth is paying their officers equal to similar suburbs of Dallas-Fort Worth. Those are things that are protected speech. And what would put the chief on notice that that kind of speech is protected, not just the general notion that we all have a First Amendment right to speak and all that? I would argue that that's Pickering, the Connick case, Denny versus Connick. All of those cases talk about that type of, I believe the Denny-Connick case involved the assistant DA in New Orleans putting together a questionnaire to figure out what was the pulse of the employees. And that's the type of thing that we would submit that is protected in the course of your First Amendment right to speak. So what is your best case that put the chief on notice that this kind of speech is protected and falls within the Garcetti protections at SEC? And this is related to speech, not association, correct? Yes. Okay. Again, I would go back to Thompson versus City of Starkville, Givhan versus Western Line Consolidated School District Supreme Court case that's cited in the brief. And it was Connick versus Myers. That was a case. Sorry about that. Denny was not involved. Connick versus Myers. Thompson versus City of Starkville, Fifth Circuit, 1990. And the Fifth Circuit recognized that the plaintiff's speech went beyond the personal concerns, talking about political favoritism and misbehavior in the department. And then Davis versus McKinney. This was both citizen speech within the college but outside our chain of command. That was the key part. There's also a Ninth Circuit case, Freetag versus Ayers, 2006. In that case, a state corrections officer tasked with disciplining inmates complained within our chain of command about inmate misconduct. But reports about the same problem to state officials outside our chain of command were protected. Let me just jump in. As a new judge, I'm entitled to ask dumb questions. What you're discussing with Judge Haynes is whether the speech in this case falls on a protected or unprotected side of these cases like Garcetti, right? Are you saying that there's a factual dispute in the summary judgment record about whether the particular speech that we're talking about falls on one side or the other? Is that what we're saying? Are you saying it's clear what the speech is and it's just a question of us interpreting it? Right. Now, part of the summary judgment also included the chief denying that she heard at least parts of it. But I mean the quality of the speech. It sounds like what Judge Haynes is talking about is the quality of the speech that we're talking about here and whether it falls on a protected or unprotected side in these public employee First Amendment cases. Right. Are you saying that there's a factual dispute about what was actually said? Or are we simply saying we all agree on what was said and we're just arguing legally about what side of the line it falls on? I think that's what exactly what we're doing. We're arguing legally because the court's jurisdiction. Well, that's why I'm asking. If it's the first, we don't have jurisdiction. If it's the second, we do. Exactly. And in your view, it's clear what the speech was, and we're just talking about the constitutional significance of it. Right. Both speech about matters that relate to pay and benefits, but then speech reaching out to the community and also relating to student safety. This was a few years ago before it got really bad, but he was a student resource officer, and he had ideas that he wanted with the association to increase student safety, and that relates to the community as a whole. And if it relates to the community as a whole, it's protected speech. Wasn't a great deal of this speech related to attempts to form the association? I think in the initial stages, yes, but then when the association was formed, then it became live. Was the speech related to soliciting members for the association? No, we're not arguing that. Now, that's part of the association. Well, what I'm asking is, is there an overlap here? There's a certain overlap, sure, because as part of getting together the people that were interested in forming the association, they were exchanging ideas and putting out mission statements, so that was part of it. There is an overlap there, yes. Okay. Thank you. Thank you very much. Thank you. All right, briefly, let me return to the Pace case. There's a quote, and it says, the circuit said, quote, this right of association encompasses... What page are you reading from, counsel? It is on page 262 under Head Notes 1 and 2. Thanks. And it says, this right of association encompasses the right of public and employees to join unions and the right of their unions to engage in advocacy and to petition government on their behalf. And this case deals with unions. Let me just ask you, I mean, that's not that clear to me. It seems to me that sentence is just an example of, to give an example of his first sentence where he said the First Amendment protects the right of all persons to associate together in groups, et cetera. And then he said this right encompasses the right of public employees to join unions. Right, but it goes on to say, thus the First Amendment is violated by state action whose purpose is either to intimidate public employees from joining a union or from taking an active part in its affairs, a union, or to retaliate against those who do. Such protective First Amendment rights flow to unions as well as their members and organizers. And so that's key in our case. And I believe the court then jumps off and some of the courts that site pays jump off and say, well, this is a union, so these are the rights that you get with that. We are asking this court to analyze what this association is, what this organization is under 617.002. And we don't think that that analysis has ever been done by any court. There is not clear precedent on that. So you're saying absent an ability to do collective bargaining, something can't be a union, and that's so obvious that we have to treat this entity as some completely different thing than a union. It's not something that looks like a duck. Yeah, I'm saying that's right. I would like this court to make an analysis for the very first time on what this entity is and what its functioning can be. And under Texas law, it cannot function as a union, as a matter of law. And this is a case of first impression. But then in that case, isn't it really a union? I mean, it's doing everything else that a union can do except the one thing you think makes a union a union, which is the collective bargaining. Let me just remind you that the Supreme Court, Texas Supreme Court in Round Rock, said public employees have the right to form unions. They just do not have the right to collectively bargain. Right, but there is a distinction here. And if you look at the goals of this organization, all they want to do, there's nine goals. All they want to do is present to the city council on behalf of the police officers all these and negotiate terms and benefits on behalf of the officers. Eight out of the nine things, they want to do that. And by law, they are prohibited from doing that. So what I'm saying is not only does the statute clearly prohibit this, but that there's not one case that deals with this context. And without bright-line law, that's why qualified immunity exists. But I think we did it from going to the city council and saying we're the COPBH or whatever their name is, and we think we're getting underpaid, we can't bargain with you all, but we're just making you aware of that and we'd like the public that's all sitting here to know and the local newspaper to know how we're being underpaid. That's my point. They can come to the city council and speak under public comments as a citizen. Sure, they can do that, but they can't. If I walk in and say, I, Katharina Haynes, am being underpaid, no one cares. But if I walk in as representing all of the police officers or all of the whoever in the city, then maybe people listen. So that's the whole idea of a collective association is your voice is louder when all of you are shouting together than when one person shows up and says, oh, I'm not being paid enough. But if you look at the statute 617-002C, it says an official of the state or political subdivision of the state may not recognize a labor organization as a bargaining agent for a group of public employees. That's bargaining. In other words, if I walked in and say, I represent all 300 police officers and we would like to be paid X dollars an hour more, and if you would agree to that, then we won't do this or that, we won't strike, we won't pretend to be sick when we're not or whatever you do. Can't do that. But you can walk in and say, we are being underpaid and we're going to go tell the local newspaper, we're going to go say it to whoever will listen, we'll show up at political events, whatever. Why can't they do that? I think they could under the public comment section, which is for citizens to talk about anything they want to. I don't think they could come to the city secretary or the mayor and say, we want an agenda item to talk to you about our terms and benefits of these officers. I don't think the city legally could do that. They may want to do that, but I don't think they can by law. That is a clear. That is a clear. Not a union kind of as a matter of law. I think under the statute they cannot function that way, so therefore they're just a benevolent association that provides no First Amendment rights to their members, and it's not clearly established. And that's true of all teachers' unions, other public employees that have formed unions, even though they can't collectively bargain. They'd be in the same position as this association. I'm only asking the court to answer the narrow question. What's your position on that? I only want the court to answer the narrow question in front of them today, which is what these nine goals are of this association. And is there a clearly established precedent? Yes, but when we speak, sometimes people look at that for the future, so we kind of have to think about that. But thank you for that. And your case is under submission, and we will take a ten-minute break.